The court took time to deliberate, and afterwards
chancellor Mathews
delivered the judgment of the court:
This case has demanded our serious consideration, and we have bestowed on it more time and attention than usual, as it is of a new impression not only in this court* but also in that from which we have derived our jurisprudence, and by whose rules of decision we are still directed. That the case is a novel one in this court, we well know, and we must conclude it to be so in that we have alluded to, because, had any decisions been there made, the books would have shewn them; and could they have done so, we are persuaded they would not have escaped the researches of counsel, with whose ingenuity and industry we are so well acquainted. We have been equally unsuccessful in our labours. As it then becomes our province to fix the rule of decision, we have been at uncommon pains in forming our judgment.
The material point in the case is, whether the judgment at law against the complainants and Carnes, whose administrator the defendant is, having been satisfied, this court- ought now to interpose its authority, so as te afford any and what relief to the complainants ?
A great number of cases have been quoted, and commented on with great ingenuity by the counsel on each side, for the parpóse of applying the principles on whic]i those cases have been determined to the case now before us. All those cases relate to sureties, or co-obligors who having paid the bond of the principal* or more than tVir *416 proportion of the obligation, have come into this court to be indemnified out of the estates of those whose debts they have been obliged to pay. How far the case of a satisfied judgment and that of a satisfied bond differ or can be “lated’ *s P°irá 110W ^01’ consideration. And here, as in all cases, the circumstances that enter into and accompany them, in the coux’se of the transaction, must always have material weight in the decision of the case, as far as they are admissible under the rules of the' court.
The counsel for the defendant has laid down the two following positions, viz. that this court cannot interfere in tliis case without intrenching on the rules and laws of another forum: But that if it does interfere, and revive the judgment, all the relief that can be given to the complainants, will be to give them a right to a special action on the case,' for an implied contract, as sureties, who had' been obliged to pay the debt of the principal, whereby they will be entitled to come in as simple contract creditors.
This court has always studiously avoided breaking in upon the rules of any other jurisdiction, and as in the various and multiplied instances, in which it has been called on to exercise its extraordinary powers in restraining proceedings at common law, we have never yet been charged with exceeding our powers, we hope we shall not incur that censure on the following occasion.
Ve will fii’st inquire into the powers of this court with respect to injunctions to stay execution. The x-ight to grant them is xxot to he questioned, it is every day’s practice. But yet it is an interference with the jurisdiction of the court whex’e the judgment was obtained. It does not however impeach the right of that court to award the judgment; it merely relates to something, which by the strict rules of that coxirt woxild not admit of correction, but which by the more enlai’ged rules of this court can be restraixxed and i’elieved against. Here is no clashing of jux’isdiction; the laws of each court are known and uniformly admitted.
*417 Another instance in which this court interposes its authority against the rigid rides of law is, in the mar-shalling of assets, contrary to the legal course of administering them.
This court has in several instances directed new trials at law, when hy the rules of that court the time had elapsed, when the application ought to have been made; and as they never deviate from that rule, this court has, in cases where manifest injustice would arise from a strict adherence to it, directed new trials to be had. It will be unnecessary to multiply instances of the like nature. These are sufficient to shew that this court does interfere with the rules of the courts of common law; and from whatever source they have arisen is now immaterial; it has been for ages the established practice, and consequently has become the law of both courts.
It is true, neither of these cases come up to the case before, the court. But let us examine the principle on which they are founded, and see whether they are not so far analogous as to demand the same claim to relief. In the case of an injunction against an execution at law, it will be found that the execution is as mandatory as any act of that court can be, and the signing of the execution is the last act of the court on any suit preferred there; yet the writ of injunction issuing from this court is equally mandatory, positively forbidding that to be done which had been by the other court ordered to be done. But it is contended, that in the present case, every requisite that could be wanting to the completion of a suit at law, was complied with; not only to the payment of the money demanded by the suit, but even the entering satisfaction on the judgment, by which final act the complainants must now be barred; because, if they ever had a right to come here for relief, it ought to have been in some intermediate ■stage of the proceedings at law; but as they liave not done so, it is their own laches, and if they have been injured, they ought to suffer for it.
That the complainants have been injured is most evident, It is a maxim of law that there can be no right Without a remedy; and that equity regards not the cir *418 cumstance, but the substance of the act. Are there not various instances in which this court will relieve against what has been considered as the final adjustment ox the claims of parties ? For instance, where a receipt in full of all demands has been given, yet if it can afterwards be clearly proved that there was an, omission of some rigid of the party giving the discharge, will not this court take cognizance of sxich a claim, and if found to be a just one, grant relief to the injured party ? In case of a conveyance of land, in which there is the clause of a certain number of acres, more or less, for a certain sum, when it is afterwards found that there is a very material deficiency in the quantity or quality of the land, does not the court grant relief against even so solemn an act of agreement of the pai’ties, and sometimes carry their authority so fai*, as totally to rescind it ? In cases of wills, where subsequent events which could not have been foreseen or guarded against by the testator have turned up, which would operate to the ruin of those he intended to benefit by his bounty, if the will of the testator was to be literally carried into execution, — lias not this court under these peculiar and oppressive circumstances over-ruled the expi'css dis*ections of the testatoi*, and done that which"would tend to the accomplishment of the benevolent intentions of the testator ? In all these cases, and others that might be mentioned,.this court has always exercised those extraordinary equitable powei’s vested in them, that the objects of their appointment might be fulfilled. Were we to act otherwise, this court would ho an useless institution. Yve consider ourselves placed here to do certain things, which the courts of common law by the strictness of tlicir rules cannot do. Indeed the first principle of a court of equity is, to coiTect the rigor of the common law.
This brings us immediately to the material point, viz. whether the powers of this court can be extended so lax-as to alter the records of the courts of common law, by-reviving a judgment, which is become inoperative in consequence of satisfaction having been entered oix it, whereby it is rendered a mere litera mortua.
*419 'Wo have said this is a new case; wo arc then called «pon to act as our predecessors have acted under the- like circumstances; that must be, on principle, and the equity of the case. Under this impression, we are of opinion, that this is a case over which this court ought to exercise, its jurisdiction, as no possible relief can be had at law, and unless we do interfere it will be at or.ee to pronounce to the citizens, that although they may in a partiadar case be ever so much injured, yet our laws are incompetent to the administering of a remedy. This would be derogatory to one of the first ?n iueipies of law. How can we then, consistently with the duties of our office, in one breath declare, that a party upon the truest principles of equity and justice, is entitled to relief against an oppressive act done by another, yet in the next breath say, the laws of our country do not authorize us to administer relief. In this case we cannot act so inconsistently. — But let us be dearly understood. Wc do not mean to say, that there is no case of hardship but what is to he relieved against; because, wo know of one, viz. that of Oliphant vs. Singleton, where we could not give relief, although it was a hard case: But it was from the very particular circumstances of that case, that no remedy could be applied to the. injury. As private men, we were convinced, from the well known character of Oliphant, that he had paid the money; but as there was net one tittle of proof that he had done so, as judges we could not say he had, and consequently could not extend relief. But is that the case here ? It is not; because here is the clearest evidence to the point on which relief is required, and opposed to which is the mere formal act of entering satisfaction on the judgment, as 'll hereafter appear.
The complainants, together with A Carnes and others, were securities for Banks in a bond to Mr. Warring-ton for 4900k and which was accompanied with a warrant of attorney to confess judgment thereon, which was accordingly done, and judgment entered up against all the parties to the bond. The. principal in the bond becomes a bankrupt; so d . several »t the securities, le<s-. lug a considerable sum due on the judgment. The rompiair- *420 ants liave been obliged to pay a very large sum on this balance; and Joseph Brown, another of the sureties, hag gjso pap] a part thereof, since which payment Joseph Brown has become insolvent. Carnes died without pay*. ing any thing on the > udgment. The defendant, the acting administrator of Carnes, who was also a large bond creditor on his estate, (but as security only for Banks,) pays out of the assets which came to his hands the balance due on the judgment, and gets satisfaction entered thereon; and the remaining assets (except a few trifling expenses incurred by himself on' account of Carnes) are sold, and he applies them towards payment on his own debt. But the complainants contend, that this was not a fair payment, for as Carnes was equally bound with them, that-Ms estate ivas liable to, and ought to have contributed equally with them for satisfaction of the judgment; the principal and rest of the securities being insolvent. That the administrator’s taking advantage of a payment (made by himself) of the small sum due on the judgment, and getting satisfaction entered thereon without their privity or knowledge, ivas taking an undue advantage of them; and his now insisting on sheltering himself under such advantage derived to him by the rules of common law, is contrary to equity, and therefore prays relief.
The defendant M^Whann, the acting administrator of Carnes, insists on the right obtained by him at law; and that this court ought not to interfere to deprive him of such right.
The administrator of Carnes can he in no better situation than Carnes himself would have been, had he now been before this court. Would he not have been'obliged then, under the circumstances of the case, to contribute Ms full proportion towards satisfaction of the balance on the judgment? He certainly would. Shall his administrator then be allowed to avail himself of the advantage he has got, and in the manner in which it was obtained ? If this is admitted, it would be countenancing an act which wc must consider as a very unreasonable and mischievous one. Because a man finds he can do a thing which will work a material injury to another, and to his *421 own particular benefit, under cover of the precise forms of law, shall he therefore be permitted to do so, and such act be implicitly acquiesced in, when it is derogatory to every principle of substantial justice ? Although the act of entering satisfaction on a judgment is so far substantial as to shew to all the world that the debt is paid, and will be a perpetual bar to any future claim of the creditor, yet it is well known that it is a thing very seldom none, because the debtor knows that if he once obtains possession of his bond with a proper acquittance for the payment of his debt, it will at all times be a sufficient voucher for him to shew that the debt is paid, and to prevent au execution being taken against him for the same debt, with these documents in Ids possession. It is a very rare instance for a man to demand of his creditor to go to the prothonotary's office, to enter satisfaction. In many instances it would be impracticable; for if a man of extensive dealings in Charleston was to be called on to do this in every suit he had brought in the different courts of the state, he would find very little leisure for any other business. It would therefore appear rather extraordinary that the defendant in the present case should have been so extremely cautious, did his conduct rest on this single circumstance: But it is readily explained when coupled with another, viz. the payment of his own debt; for it is evident, that the less of the assets of the intestate’s estate he applies to the payment of other debts, the more will remain to satisfy his own. Was it for the purpose of paying liis own debt only, that the administration was granted him ? Surely not. Then again, when he did come to a knowledge of the judgment against Carnes, did ho not plainly see, or did he not know from Warring-ton, what parties had paid money on the judgment ? Did lie not find that Carnes had paid nothing ? Did he not find that some of the other securities had paid large sums ? That on every principle of justice Carnes’ estate was equally liable with the other securities for payment? Ought he not then to have called on all the parties concerned, and come to a fair adjustment of the business with them ? Tills is what he- ought properly to have done: But *422 what did he ? Why he pays a small balance, due on the judgment out of Carnes estate; and then applies the whole- remainder of the estate in his own hands to the payment of his bond debt; and as he confesses by his answer, thus turns the other securities over to tlvdr action of indebitatus assumpsit, and obliges them to come in as simple contract creditors, whereby his specialty debt would be entitled to a priority of payment; when he at the same time acknowledges the estate to be insolvent. Wo may really say with the prayer of the bill, that such actings and doings are contrary to equity and good conscience. It might be further asked whether Carnes? estate, has been benefitted by the. payment made by the complainants ? There is a lapse, of near three years between the payment made by complainants and that made by the administrator of Carnes; is it not fail to presume from hence that Warrington was induced to wail tor the small balance in consequence of the large payment that had been made him by complainants. But had no payment been made, the strong presumption is, that the parties would have pressed for payment; and had Carnes’ estate been pressed for payment equally with the others, it must have been distressed, because it appears that the funds equal to such a demand did not come -into the administrator’s hands till March 1790; and the payment made by complainants was in 1789. The advance made by the complainants must clearly then have been a benefit to Carnes’ estate. One remarkable circumstance in the accounts rendered by the administrator is, that the 4191. 13s. 5d. paid by him on account of the judgment, was the only debt paid by him, which had been incurred by Carnes as security to him for Banks; the remainder is for expenses incurred by himself; and out of 471. 15s. so incurred, 421. 16s. 3d. of it has been paid for towit counsel fees, and costs. One other circumstance too remarkable to be passed over in silence is, the application of Mr. Joseph Brown to the defendant, to demand of Warrington satisfaction to be entered on the judgment after he had paid the 4191. 13s. 5d. As he Brown was then confessedly insolvent, why should he have been se *423 solicitous ¡Vr this being done? to (he ; artice. This must be best known
It 1«'S been further contended, on the pari of the defendants, that it is from the laches of complainant that any loss has been incurred by them; for bad they given notice to the defendant of their intention to demand a contribution from Carnes’ estate before defendant had paid the balance on the judgment, and had otherwise disposed of the whole of the assets which came to his hands, he would have been prepared to meet the demand, but as they never did so until he had administered the assets; and as there was a lapse of near six years from the death of Carnes to the time he paid the judgment, and neas eight years before the demand was made, it is such an unreasonable delay and laches in the complainants, that they ought not now to be permitted to come here and Unravel the transactions of the administrator, to his great Inconvenience and detriment.
It must be admitted, that there has been some laches on the part of complainants, but we do not think it suck as ought to preclude them from relief, as one of the complainants resides out of this state, as all the parties arc still alive, and as the payments made by the administrator has been to himself only. Had the payment been to a number of persons, and tbe relief prayed for would necessarily have turned the administrator over to such relief from the other creditors, this court would have entertained considerable doubt on the question; but as that is not now the case, and as the case is circumstanced, we think the complainants ought to be relieved.
From tills v iew of the case, and from the most mature consideration, we are of opinion, that the complainants are entitled to be relieved against th'e act of the defendant: Because we do not conceive it to be one of those solemn requisites of law, that will not admit of a revision in a court of equity, and which, if corroded here, can he liable to any kind of dangerous or even inconvenient consequences; but on the contrary, it will be opening that door of j ustice, and admitting injured parties to the benefits which the real equity of their case entitled them to, which *424 would otherwise be for ever closed against them; not only to their oppression, but greatly to the discredit of the jurisprudence of the state.
As it is admitted that the estates of Banks and For-syth are, and that Joseph Brown is insolvent, it must therefore be referred to the master to state what has been paid by complainants, and what by defendants out of Carnes’ estate; that interest be allowed on each payment; that the amount he divided into three parts, and whatever sum shall he found to have been paid by the administrator of Carnes less than his third part, be by him paid to the complainants. And that each party pay they? own costs.